1

2

3

4                      UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7    ROBERT E. BROCK, et al.,              Case No.  14-cv-01889-HSG

             Plaintiffs,
8                                          **ORDER GRANTING IN PART AND**
                                           **DENYING IN PART DEFENDANTS'**
9         v.                               **MOTIONS TO DISMISS**

10   CONCORD AUTOMOBILE DEALERSHIP          Re: Dkt. Nos. 64 and 66
     LLC, et al.,
11            Defendants.

12          This action was filed by nine former employees of Concord Automobile Dealership LLC

13   dba Lexus of Concord LLC (Robert Brock, Jr., Amanda Bo Denton, Jeffrey Lao, Kamal Dayekh,

14   Wilson Woo, Chirstopher Montoya, Francisco Ubaldo, Jamal Khan, and Christopher Navarro) as

15   well as the spouses of Brock and Dayekh (Teresa Brock and Wissam Halhoul).  Plaintiffs assert 24

16   causes of action arising from the workplace environment at Lexus of Concord, Defendants'

17   alleged scheme to steal Plaintiffs' bonuses, and death threats and other forms of retaliation made

18   by the Defendants after Plaintiffs complained of Defendants' conduct.  The Defendants are Lexus

19   of Concord and three high-level Lexus of Concord employees: Patrick Miliano, the General Sales

20   Manager, Greg James, the General Manager, and Hank Torian, the owner of Lexus of Concord.

21   Lexus of Concord, James, and Torian (collectively, the "Concord Defendants") and Miliano each

22   moved to dismiss certain causes of action alleged by Plaintiffs.  *See* Dkt. Nos. 64 ("Miliano Mot.")

23   and 66 ("Concord Mot.").

24          The Court has carefully considered the arguments and evidence offered by the parties, both

25   in their briefs and during the hearing on this motion, and, for the reasons discussed below,

26   **GRANTS IN PART** and **DENIES IN PART**, Defendants' Motions to Dismiss.

27       I.   **FACTUAL BACKGROUND**

28          The operative complaint in this action (the "Second Amended Complaint" or "SAC")

United States District Court
Northern District of California

1  spans over seventy pages and contains just shy of three hundred numbered paragraphs.  The

2  allegations center on three general subjects: (1) the hostile work environment at Lexus of Concord;

3  (2) the "Spiff" bonus program and the Defendants' alleged fraud and conversion of funds

4  associated with that program; and (3) death threats and retaliation against certain Plaintiffs who

5  discovered and complained of Defendants' conduct.

### A.   Hostile Work Environment

7      The SAC alleges that Miliano regularly directed racist, sexist, and homophobic insults at

8  both Plaintiffs and customers.  For example, Miliano frequently used the terms "Fish-heads,"

9  "Niggers," "Dog-eaters," "Towel-heads," "Faggots," "Cunts," and "Bitches," to name a few.  *See*

10  SAC ¶¶ 119 ("[Miliano] would regularly and freely use and repeat . . . 'fish-heads', 'Niggers',

11  'dog-eaters', and 'towel-heads' . . ."); 167 ("Every time Mr. Khan went to [Miliano's] office . . .

12  Mr. Khan heard him refer to people as fucking low lives, Niggers, Turban Heads, Pussies, [and]

13  Faggots."); 175 ("[Miliano] repeatedly, and on a daily basis and on multiple occasions each day,

14  made racial comments toward Mr. Navarro.").  Miliano is also alleged to have threatened some

15  employees with violence.  Specifically, Ubaldo and Montoya allege that Miliano threatened to

16  "kick [Montoya's] ass," *id*.  ¶ 139, and that he "could beat [Ubaldo] up," *id*. ¶ 154.

17      James is alleged to have "participated and laughed about the derogatory remarks and the

18  abuse inflicted on the employees by [Miliano]."  *Id*. ¶ 149.  Woo, Montoya, Ubaldo, Lao, Khan,

19  and Navarro allege that they quit their jobs because of the constant abuse.  *Id*. ¶ 271 ("[Miliano

20  and James] engaged in such continuous abusive and humiliating conduct, including racist and

21  violent remarks directed towards Mr. Woo, Mr. Montoya, Mr. Navarro, and Mr. Ubaldo, Asians,

22  Latinos, African-Americans and other racial minorities, as well as women, that Mr. Woo, Mr.

23  Montoya, Mr. Navarro and Mr. Ubaldo finally were compelled and did quit their jobs.").

### B.   The Spiff Bonus Program

25      The SAC alleges that Lexus of Concord incentivized its sales employees through a "Spiff"

26  bonus program.  *Id*. ¶ 29.  Each salesperson who sold a used car was entitled to $100, which was

27  distributed every Friday by Miliano from a "cash bag" of several thousand dollars.  *Id*. ¶ 29(a).

28  An additional incentive was provided for weekend sales, called "Pyramid Spiff."  *Id*. at ¶ 29(b).

United States District Court
Northern District of California

United States District Court
Northern District of California

On weekends, the first salesperson to sell a car received $25 and an additional $25 for each additional car sold that day (regardless of the responsible salesperson), provided that the target sales goal (usually 10 cars) was met. *Id.* The second salesperson to sell a car received $25 for the car he or she sold, plus an additional $25 for each car sold later in the day, and so forth. *Id.* Spiff payments distributed to salespersons were recorded as taxable earnings, which Lexus Concord tracked with triplicate carbon copy vouchers. *Id.* ¶ 29(b)-(c). The salesperson and the sales manager were expected to sign each voucher, with the salesperson keeping one copy and the sales manager submitting the remaining two copies to Lexus of Concord's business office. *Id.*

Plaintiffs allege that Miliano was in charge of the Spiff bonus program, and that Miliano conspired with James and Torian to use the bonus program to enrich themselves at the expense of the Plaintiffs. Specifically the SAC alleges two forms of misconduct related to the Spiff bonus program:

First, Plaintiffs allege that Miliano refused to pay employees the amount due under the Spiff bonus program. *Id.* ¶ 39. For example, the SAC alleges that Montoya was due $800 under the Spiff program, but that Miliano changed the amount to $550, explaining that there "were some uncalculated bills, resulting in the decrease of commission wages" and that "the Spiff money ran out and Mr. Montoya would have to wait until the following week to receive his wages." *Id.*

Second, Plaintiffs allege that Lexus of Concord would issue a voucher to a salesperson for the actual amount due pursuant to the program, but that Miliano would submit a voucher with a higher dollar amount for the same transaction and pocket the difference. *Id.* ¶ 30. For example, Plaintiffs allege that Lao signed a voucher for $875, but that Miliano turned in an unsigned or forged voucher of $1,375 for that same transaction. *Id.* The SAC alleges that Defendants—by submitting fraudulent vouchers for Spiff bonuses that Plaintiffs did not receive—inflated Plaintiffs' reported earnings and caused them to pay a greater amount in taxes than they would have paid but for Defendants' fraudulent scheme. Relatedly, Plaintiffs allege that Miliano would submit duplicate vouchers for the same car, which increased Plaintiffs' reported earnings (and thus tax liability) even though Plaintiffs did not receive the inflated bonus amounts. *Id.* ¶ 31.

### C.     Death Threats and Brock's Terminations

In February of 2014, Brock complained to James of Miliano's alleged bonus scheme, as well as his "history, pattern, and practice of creating a hostile and violent work environment." *Id.* ¶ 35-36. On March 13, 2014, Dayekh sent James, Brock, and various other managers at Lexus of Concord an (apparently anonymous) email accusing Miliano of perpetrating the Spiff scheme. *Id.* ¶ 37. That same day, Miliano "stormed" into Brock's office and stated "I know you sent this fucking email to management. I'm going to kill you, I am going to hunt you down, and I'm going to kill your wife, and I'm going to kill your kids!!!" *Id.* ¶ 55. Miliano is alleged to have made similar threats against Lao and Dayekh. *See id.* ¶ 76 ("If I cut you up into little pieces and throw you down the ravine, no one will ever find you."); ¶ 98 ("I will kill you if I find out that it was you, and if I lose my job I will hurt you so bad and your family, too. I will hunt you and kill you. Greg will never fire me because of this email.").

Each of the Plaintiffs who worked at Lexus of Concord alleges that they were either: (1) terminated in retaliation for exposing Defendants' misconduct; or (2) were constructively discharged by the Defendants' discriminatory, retaliatory, and hostile conduct. As is relevant to this motion, Brock alleges that he agreed to discuss Miliano's conduct with Torian on or around April 20, 2014 because Torian promised him he would not be fired, stating: "I own Lexus of Concord. I will not fire you. You will not be fired." *Id.* ¶64. Despite this reassurance, Miliano alleges that Torian never intended to stand by his promise, and that he was fired several days later based on the information he disclosed during that meeting. *Id.* ¶ 70.

## II.     LEGAL STANDARD

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain sufficient facts to state a plausible claim on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint

United States District Court
Northern District of California

1   attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

2   plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

3   labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

4   Factual allegations must be enough to raise a right to relief above the speculative level."

5   *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

6          A motion to dismiss pursuant to Rule 12(b)(6) may also challenge a complaint's

7   compliance with Federal Rule of Civil Procedure 9(b) where fraud is an essential element of a

8   claim. *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). Rule 9(b),

9   which provides a heightened pleading standard, states: "In alleging fraud or mistake, a party must

10  state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge,

11  and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). These

12  circumstances include the "'time, place, and specific content of the false representations as well as

13  the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764

14  (9th Cir. 2007) (per curiam) (quotation omitted); *see also Kearns v. Ford Motor Co*., 567 F.3d

15  1120, 1124 (9th Cir. 2009) ("Averments of fraud must be accompanied by 'the who, what, when,

16  where, and how' of the misconduct charged."). "Rule 9(b) demands that the circumstances

17  constituting the alleged fraud be specific enough to give defendants notice of the particular

18  misconduct . . . so that they can defend against the charge and not just deny that they have done

19  anything wrong." *Kearns*, 567 F.3d at 1124.

20         In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as

21  true and construe them in the light most favorable to the plaintiff. *See id*. at 550; *Erickson v.*

22  *Pardus*, 551 U.S. 89, 93-94 (2007). If the Court dismisses the complaint, it will generally grant

23  leave to amend "unless it determines that the pleading could not possibly be cured by the

24  allegation of other facts." *Lopez v. Smith*, 203 F.3d 122, 1127 (9th Cir. 2000) (citation omitted).

25  When a party repeatedly fails to cure deficiencies, however, the court may order dismissal without

26  leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### III.     DISCUSSION

#### A.     First Cause of Action: Fair Labor Standards Act

Brock and Lao assert that their termination and demotion, respectively, from Lexus of Concord, were in retaliation for filing an April 2014 civil action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* They allege that this retaliation violates Section 215(a)(3) of the FLSA, which makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." 29 U.S.C. § 215(a)(3).

The Concord Defendants move to dismiss Brock and Lao's retaliation claim on the ground that the complaint that allegedly triggered the negative employment consequences sought relief under a provision of the FLSA that does not provide a private cause of action. *See* Concord Mot. at 5. In other words, the Concord Defendants argue, without citing any legal authority, that because Brock and Lao did not properly plead an FLSA violation upon which they could recover, any alleged retaliation committed by the Defendants does not violate Section 215(a)(3). *See id.*

The Court disagrees. Section 215(a)(3) prohibits employers from retaliating against employees who file a complaint "under or related to this chapter." 29 U.S.C. § 215(a)(3). The statute does not require the employee's complaint to be meritorious, or even to survive judgment on the pleadings. In fact, the inclusion of both "under" and "related to" suggest that even complaints that do not squarely fall "under" the FLSA may provide an adequate ground for a retaliation claim under Section 215(a)(3). Here, the first cause of action in Plaintiffs' original complaint qualifies under Section 215(a)(3) in that it expressly identifies the FLSA as the authority supporting relief. Dkt. No. 1 at 50. Regardless of whether the facts alleged supported that relief (or whether the Plaintiffs had standing to assert the particular claim alleged), the first cause of action was clearly "under or related to [the FLSA]." The plain language of Section 215(a)(3) requires no more.

The Concord Defendants' Motion to Dismiss the First Cause of Action is **DENIED**.

**B.    Second and Fourth Causes of Action: Cal. Labor Code 1102.5 and Retaliation in Violation of Public Policy under *Tameny***

Brock, Lao, Denton, and Dayekh assert claims under California Labor Code Section 1102.5, and for retaliation pursuant to *Tameny v. Atlantic Richfield*, Co., 27 Cal. 3d 167 (Cal. 1980), against Lexus of Concord.  The Concord Defendants observe that, in order to prevail on a retaliation claim under *Tameny*, a plaintiff must demonstrate that his or her termination violated public policy, and point out that the violation of public policy Plaintiffs allege is a violation of California Labor Code 1102.5—the very subject of their second cause of action.  *See* Concord Mot. at 6.  The Concord Defendants argue that, given this overlap, causes of action two and four are redundant and that one of them should be dismissed.

Plaintiffs respond that while there is some overlap between these claims, there are several important differences.  First, Plaintiffs argue that the elements necessary to establish liability under each cause of action are different.  Opp. to Concord Mot. at 6.  Second, Plaintiffs assert that the "focus" of a wrongful termination claim is broader than the "focus" of Section 1102.5: the former concerns public policy generally while the latter concerns only whistleblowing activity.  *Id*. at 6-7.  Third, Plaintiffs argue that unlike Section 1102.5, there is no exhaustion requirement to pursue a common law wrongful termination claim.  *Id*. at 7.  Fourth, Plaintiffs direct the Court to lawsuits where these causes of action have been pursued in tandem by other plaintiffs.  *Id*. Finally, at the hearing on the instant motion, Plaintiffs' counsel also represented that attorneys' fees would be available under Section 1102.5, but not under a *Tameny* claim.

The Concord Defendants offer no legal authority permitting the Court to dismiss one cause of action simply because it shares elements with or is similar to another cause of action.  In fact, the Ninth Circuit recently rejected the proprietary of dismissing "duplicative" or "superfluous" claims on those grounds.  *See Astiana v. Hain Celestial Grp., Inc.*, --- F.3d ---, 2015 WL 1600205, at *7 (9th Cir. Apr. 10, 2015) ("To the extent the district court concluded that the cause of action was nonsensical because it was duplicative of or superfluous to Astiana's other claims, this is not grounds for dismissal.").

The Concord Defendants' Motion to Dismiss the Second and/or Fourth Cause of Action is **DENIED**.

United States District Court
Northern District of California

**C.    Fifth and Eleventh Causes of Action: Fraud and Conversion Relating to the Spiff Bonus Program**

Plaintiffs allege that Defendants' schemes related to the Spiff bonus program support causes of action for both fraud and conversion.  In order to plead the elements of fraud that give rise to the tort action for deceit, a plaintiff must allege "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (Cal. 1996).  "The elements of a conversion claim are: "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."  *Welco Electronics, Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (Cal. App. 2014) (citation omitted). "Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved[.]" *PCO, Inc. v. Christensen, Miller, Fink, Jacobs. Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 395 (2007).

Both Miliano and the Concord Defendants argue that Plaintiffs' fifth and eleventh causes of action arising out of the alleged Spiff bonus program should be dismissed.  As to the fraud cause of action, Miliano argues that: (1) the SAC fails to allege that he made a misrepresentation relating to Plaintiffs' bonuses; (2) Dayekh and Khan were not salespersons and thus were not eligible for Spiff bonuses; and (3) the SAC does not allege that any Plaintiff relied on a misrepresentation to their detriment.  *See* Miliano Mot. at 3-4.  As to the conversion cause of action, Miliano and the Concord Defendants assert that the SAC does not state a claim for conversion because: (1) Plaintiffs do not identify the exact amount of money Miliano allegedly stole, and thus there is not an "identifiable sum" upon which a conversion claim may be based; (2) some Plaintiffs were never entitled to bonuses, and thus cannot plead a claim for conversion; and (3) Plaintiffs' increased tax liability is not an amount in any of the Defendants' possession.

The Court's analysis of these issues is hampered by the formatting of the SAC, which lists almost fifty pages of allegations before reaching the individual causes of action.  Each cause of action incorporates all preceding paragraphs—whether or not those paragraphs are relevant to the particular cause of action asserted—and then, without distinguishing the facts that support the

asserted cause of action by each Plaintiff against each Defendant, summarize the legal elements of each claim with threadbare factual support.  For example, the only substantive paragraph of the fifth cause of action related to the Spiff bonus program reads:

> DEFENDANT MILIANO intentionally misrepresented to Plaintiffs, and each of them, the amount of Spiff wages Plaintiffs had earned. Further, DEFENDANT MILIANO falsified and forged employment records intentionally and with knowledge to deceive and deprive Plaintiffs of their legitimate earned wages and to cause Plaintiffs to pay taxes on wages DEFENDANT MILIANO pocketed.  Plaintiffs justifiably relied on DEFENDANT MILIANO'S representation regarding Spiff wages because DEFENDANT MILIANO was a supervisor and DEFENDANT JAMES sanctioned his conduct.  As a result of Plaintiffs' justifiable reliance, Plaintiffs suffered injuries, losses, and damages including lost wages and overpayment of taxes.

SAC ¶ 214.  Plaintiffs' only substantive paragraph in the eleventh cause of action is even less illuminating:

> DEFENDANT MILIANO stole, took, converted, embezzled Plaintiffs' wages with the specific intent to keep and convert their wages for his own use and benefit. Plaintiffs did not consent to DEFENDANT MILIANO's illegal conversion of their earned wages.

Id. ¶ 244.  Plaintiffs make no effort to tie the facts of each alleged scheme described in the preceding paragraphs to the legal elements required to plead each cause of action.  Nor does the SAC identify which allegations support each individual Plaintiff's claim against the Defendants. In short, the Court has been left to pick through the SAC to determine whether each Plaintiff has asserted sufficient facts to satisfy each element of each cause of action.  Plaintiffs' briefing fails to alleviate the problem, as it similarly discusses the alleged schemes in a general manner without parsing the factual allegations that support the causes of action asserted by each individual Plaintiff.  In fact, during the April 23, 2015 hearing, counsel for Plaintiffs conceded that the SAC does not allege facts supporting that Dayekh and Khan were victims of the alleged Spiff Bonus schemes (arguing instead that discovery will likely lead to information supporting the assertion of their claims).

Accordingly, as currently pled, the Spiff-related fraud and conversion causes of action asserted in the SAC cannot survive Defendants' motions to dismiss.  Although the SAC is an improvement from the First Amended Complaint—which Judge Gonzalez Rogers refused to even

consider because doing so would "waste judicial resources," Dkt. No. 55 at 3—the SAC still blurs alleged facts supporting causes of action asserted by some Plaintiffs as supporting causes of action asserted by others.  Plaintiffs are directed to reorganize their complaint to allege which facts support each cause of action *as to each individual Plaintiff*.  In other words, both the fifth and eleventh causes of action should be divided into nine separate subheadings (one for each Plaintiff asserting each claim), which should in turn delineate the alleged facts that support each element of each Plaintiff's claim.  To the extent that some Plaintiffs cannot at this time assert in good faith that they were victims of the alleged scheme, they should *not* assert those claims.  If, as Plaintiffs expect, discovery in this action uncovers evidence suggesting that they were also victims, the liberal pleading standards of Federal Rule of Civil Procedure 15(a) would clearly permit Plaintiffs to amend upon a timely motion.  *See* Fed. R. Civ. P. 15(a) (courts "should freely give leave when justice so requires.").  Accordingly, the Defendants' Motions to Dismiss the Fifth and Eleventh Causes of Action are **GRANTED**.

Although Plaintiffs' fraud and conversion causes of action will ultimately rise or fall based on the facts asserted in the Third Amended Complaint, the Court provides the following guidance to the parties:

### 1.  Non-Payment of Bonuses to Which Plaintiffs Were Entitled

As to Plaintiffs allegation that Miliano "pocketed" bonus money to which Plaintiffs were entitled, there does not appear to be a reasonable argument that Miliano's alleged misconduct supports a claim for fraud.  In essence, Plaintiffs allege that Miliano stole a portion of their bonuses and (in some instances) didn't tell them about it.  That is conversion, not fraud.  Plaintiffs' concession that it is only "arguabl[e]" that they would have reconsidered their participation in the bonus program were they aware of Miliano's scheme, Opp. to Miliano Mot. at 6, demonstrates that they have not pled an actionable misrepresentation or reliance on that misrepresentation to their detriment.  To the extent Miliano did steal all or some portion of Plaintiffs' bonuses, their remedy lies under a theory of conversion.

Of course, Plaintiffs will eventually need to identify the amount of money allegedly stolen by Miliano in order to prevail on their conversion claims, but—contrary to Defendants'

United States District Court
Northern District of California

1   assertion—they need not do so at the pleading stage.  Instead, plaintiffs are only required to allege

2   conversion of "a sum that is 'capable of identification.'" in order to survive judgment on the

3   pleadings.  *Natomas Gardens Inv. Grp., LLC v. Sinadinos,* 710 F. Supp. 2d 1008, 1023 (E.D. Cal.

4   2010) ("In this case, plaintiffs may have stated a cause of action for conversion by alleging, in

5   effect, an amount of cash 'capable of identification.'") (citation and internal quotation marks

6   omitted).  Here, Plaintiffs have alleged a scheme whereby Miliano stole bonuses related to the sale

7   of specific automobiles sold at Lexus of Concord.  Those specific amounts appear to be at least

8   "capable of identification" and are thus sufficient to support a claim for conversion at the pleading

9   stage.

10                    **2.   Over-Reporting of Bonuses to Which Plaintiffs Were Not Entitled**

11               Whether and under what theory of liability Plaintiffs' second alleged bonus scheme is

12   actionable will largely depend on how the Third Amended Complaint alleges Plaintiffs were

13   injured.  In the SAC, Plaintiffs assert that, by secretly submitting inflated or duplicative bonus

14   vouchers in their name, but keeping the money for himself, Miliano inflated Plaintiffs' reported

15   earnings to the IRS and thus increased their tax liability.  Exactly how this alleged misconduct

16   resulted in injury to the Plaintiffs is less clear.  If, for example, Plaintiffs assert that they relied on

17   inflated earning reports provided by Defendants when paying their taxes, Plaintiffs may well state

18   a cause of action for fraud.  In contrast, if Plaintiffs assert that Lexus of Concord simply over-

19   withheld their wages because of those over-reported earnings, Plaintiffs may more appropriately

20   plead a cause of action for conversion.  Of course, not all of the nine Plaintiffs asserting these

21   claims may have been injured in the same way.  Each Plaintiff must assert facts supporting why

22   and how he or she was injured by Miliano's alleged misconduct in order to survive the pleading

23   stage.

24         **D.   Fifth Cause of Action: Fraud Claims Against James and Torian**

25               The Concord Defendants further argue that the fraud claims brought against James and

26   Torian do not state facts upon which relief can be granted.

27                    **1.   James**

28               The Concord Defendants argue that Plaintiffs' fifth cause of action fails against James for

1  two reasons: (1) James is not identified as a defendant under the fifth cause of action; and (2)

2  Plaintiffs have not sufficiently alleged reliance or damages.  The Court agrees on both counts.

3  First, the Concord Defendants are correct that James is not identified as a defendant under

4  the fifth cause of action.  No cause of action for fraud lies against James unless it is asserted in the

5  operative complaint.

6  Second, Plaintiffs' fraud claim against James is based on the allegation that, when Brock,

7  Lao, and Dayekh reported Miliano's conduct, James stated that "he would deal with the situation,"

8  SAC ¶ 80, "that all of the employees would get their money back," *id.*, and to not "go to the

9  police," *id.* at ¶ 101.  Plaintiffs further allege that James had no intention of investigating the

10  scheme given his own participation, and that Brock, Lao, and Dayekh justifiably relied on James'

11  statements by: (1) remaining employed at Concord; and (2) refraining from calling the police.

12  Opp. to Concord Mot. at 8-9.

13  Plaintiffs' allegations do not state a claim for fraud.  Although misrepresentations that lull

14  a victim into inaction may support a cause of action for fraud in some circumstances, a plaintiff

15  must still allege that he or she suffered harm as a result of his or her reliance.  Here, Plaintiffs have

16  alleged that they refrained from certain actions, but not how their inaction resulted in harm.

17  The Concord Defendants' Motion to Dismiss the Fifth Cause of Action against James is

18  **GRANTED**.

19  ### 2.  Torian

20  The Concord Defendants argue that Brock's fraud claim against Torian fails because: (1)

21  Brock does not allege that he reasonably relied on or suffered damages as a result of Torian's

22  alleged misstatement; and (2) the SAC does not contain facts identifying the "who, what, and

23  where" of the alleged fraud as required by Federal Rule of Civil Procedure 9(b).

24  Plaintiffs respond that Brock has sufficiently pled the elements of fraud in the detail

25  required by the Federal Rules.  In the SAC, Brock alleges that Torian stated that "he would not

26  fire him if Mr. Brock divulged information about Mr. Brock's complaints."  SAC ¶ 212.  Brock

27  alleges that he agreed to meet with Torian and discuss the alleged misconduct at Lexus of Concord

28  based on Torian's promise.  *Id.* ¶¶63-66.  Brock further alleges that Torian had no intention of

United States District Court
Northern District of California

1   fulfilling his promise, and that Torian then used the information Brock disclosed as a basis to

2   wrongfully terminate his employment.  *Id*. ¶ 213.  In short, Brock asserts that Torian induced him

3   to share information with a false promise not to fire him, which allegedly "resulted in the very

4   harm that Torian promised would not occur, i.e. termination."  Opp. to Concord Mot. at 12.

5       Accordingly—and contrary to the Concord Defendants' assertion—Brock has alleged that

6   he changed his position in reliance on Torian's statement (*i.e.*, by agreeing to meet with Torian

7   and discuss Miliano and James' alleged misconduct) and resulting damages (*i.e.*, his termination

8   because of that disclosure).  The "who, what, when, where, and how" of the fraud are alleged in

9   detail in paragraphs 63 through 70 of the SAC.  In those paragraphs, the SAC explains how Torian

10  induced Brock to accept the meeting, described in detail the subject matter of their discussion

11  (along with specific quotations of what was said), and the facts surrounding his resulting

12  termination.  This information is sufficient to provide Defendants the notice required by Rule 9(b).

13  *See Kearns*, 567 F.3d at 1124 ("Rule 9(b) demands that the circumstances constituting the alleged

14  fraud be specific enough to give defendants notice of the particular misconduct . . . so that they

15  can defend against the charge and not just deny that they have done anything wrong.").  The

16  Concord Defendants do not address why these allegations are insufficient to support a claim of

17  fraud.  Instead, both their motion and reply brief appear to simply deny the existence of these

18  allegations altogether.  *See* Concord Reply at 4 ("[Brock] has not pointed out any legally

19  cognizable change in position, other than maintaining the *status quo ante*, resulting from this

20  alleged promise.").  While Brock's claim of fraud against Torian may fail for other reasons, it does

21  not fail on the grounds asserted by the Concord Defendants.

22      The Concord Defendants' Motion to Dismiss the Fifth Cause of Action asserted by Brock

23  against Torian is **DENIED**.

24  **E.   Sixth Cause of Action: Assault**

25      Although Lao, Dayekh, and Brock allege they were assaulted by Miliano, Miliano only

26  moves to dismiss the cause of action as to Lao.  Specifically, Miliano argues that Lao's allegations

27  do not satisfy the elements of assault because the facts alleged do not suggest that Lao reasonably

28  anticipated imminent contact.  *See Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1604 (Cal. App.

United States District Court
Northern District of California

13

1    2012) ("while apprehension of that contact is the basis of assault, [m]ere words, however

2    threatening, will not amount to an assault") (citation omitted).

3         The Court agrees.  Lao alleges that while standing next to a car, Miliano "smirked and

4    stated, '[i]f I cut you up into little pieces and throw you down the ravine, no one will ever find

5    you.'"  SAC ¶ 75.  This threat does not rise to the level of an assault.  That Mr. Lao allegedly

6    knew that Miliano brought a sword and firearms to the workplace and claimed to be a mixed-

7    martial artist, *see* Opp. to Miliano Mot. at 8, does not transform Miliano's "mere words" into a

8    legally cognizable assault.  Lao does not allege any action by Miliano at the time of the threat that

9    could place a reasonable person in apprehension of imminent contact.

10        Accordingly, Miliano's Motion to Dismiss the Sixth Cause of Action is **GRANTED** solely

11   as to Plaintiff Lao.

12   **F.    Seventh Cause of Action: Workplace Violence**

13        The Ralph Act, California Civil Code § 51.7, provides that "all persons within California

14   have the right to be free from any violation, or intimidation by threat of violence, committed

15   against the person on account of race." [1]  *Knapps v. City of Oakland,* 647 F. Supp. 2d 1129, 1167

16   (N.D. Cal. 2009) (citing Civil Code § 51.7).  A claim brought under Section 51.7 requires a

17   plaintiff to plead four elements: (1) the defendant threatened or committed violent acts against the

18   plaintiff; (2) the defendant was motivated by his perception of plaintiff's race; (3) the plaintiff was

19   harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm.

20   *See Austin B. v. Escondido Union Sch. Dist.,* 149 Cal. App. 4th 860, 880-81 (Cal. App. 2007).

21        Miliano moves to dismiss Plaintiffs' seventh cause of action on the grounds that: (1)

22   Denton, Ubaldo, and Montoya do not allege that they were threatened; and (2) Brock, Lao, and

23   Dayekh do not allege they were threated based on a protected status or protected activity.

24   Plaintiffs respond that Denton, Ubaldo, and Montoya pled that they were threatened by Miliano,

25   and that the threats against Brock, Lao, and Dayekh were based on their subject classifications.

26

27   _____

28   [1] The Ralph Act also protects individuals based on sex, color, religion, ancestry, national origin,
     disability, medical condition, genetic information, marital status, and sexual orientation. *See* Cal.
     Civ.Code §§ 51.7(a), 51(b).

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1    *See* Opp. to Miliano Mot. at 9.  Specifically, Plaintiffs contend that Mr. Brock was threatened "due

2    to his association with Lao and Dayekh."  *Id.* at 10.  The Court agrees with Miliano that Denton,

3    Brock, Lao, and Dayekh do not state a claim under Section 51.7, but finds that Ubaldo and

4    Montoya's claims survive.

5         First, while Plaintiffs allege that Miliano directed rude and aggressive language at Denton,

6    the conduct alleged does not rise to "violence, or intimidation by threat of violence" prohibited by

7    Civil Code Section 51.7.  Yelling "[p]ack your shit and leave if you don't like it.  My job is to

8    torture you!  Get the fuck out of my office," *see* SAC ¶ 118, is not violence or intimidation by

9    threat of violence.  In contrast, Ubaldo and Montoya allege that Miliano threatened to "kick

10   [Montoya's] ass," *id.* ¶ 139, and that he "could beat [Ubaldo] up," *id.* ¶ 154.  These statements

11   plausibly constitute threats of violence under Section 51.7.

12        Second, the Court agrees that the SAC does not allege facts supporting the Section 51.7

13   cause of action as to Brock, Lao, and Dayekh.  While the SAC alleges that Miliano used offensive,

14   racist, and sexist language in the workplace, the threats allegedly made to Brock, Lao, and Dayekh

15   concerned and were made in direct response to complaints about Miliano's alleged misconduct.

16   *See* SAC ¶¶ 55, 75, 98.  No reasonable reading of the SAC supports the inference that those

17   specific threats were based on Brock, Lao, or Dayekh's membership or perceived membership in a

18   protected class.  In fact, Miliano made similar threats to Brock, who is Caucasian, Lao, who is

19   Filipino-American, and Dayekh, who is Indian-American.  The common thread is Miliano's

20   perception that Brock, Lao, and Dayekh may have "blown the whistle" on his bonus scheme, not

21   their protected characteristics.  The SAC does not plead sufficient facts to suggest otherwise.

22        Miliano's Motion to Dismiss the Seventh Cause of Action is **GRANTED** solely as to

23   Denton, Brock, Lao, and Dayekh.

24        **G.    Eighth Cause of Action: Hostile Work Environment**

25        In order to establish a prima facie claim of hostile work environment under Title VII, a

26   plaintiff must establish that (1) he or she was subjected to verbal or physical conduct because of

27   his or her protected characteristic, (2) the conduct was unwelcome, and (3) the conduct was

28   sufficiently severe or pervasive to alter the conditions of employment and create an abusive work

environment. *Manatt v. Bank of America,* 339 F.3d 792, 798 (9th Cir. 2003). In order to be

perceived as hostile, a working environment must be "subjectively and objectively" hostile.

*Brooks v. City of San Mateo,* 229 F.3d 917, 923 (9th Cir. 2000). A determination of whether

conduct qualifies as hostile includes its frequency, severity, nature, and whether it is physically

threatening or humiliating as opposed to merely verbally offensive. *See Galdamez v. Potter,* 415

F.3d 1015, 1023 (9th Cir. 2005). Simple teasing, offhand comments, and isolated incidents, unless

extremely serious, fall into the category of nonactionable discrimination. *See, e.g., Manatt,* 339

F.3d at 798. "The required showing of severity or seriousness of the harassing conduct varies

inversely with the pervasiveness or frequency of the conduct." *Brooks,* 229 F.3d at 926.

California courts apply the same standard in claims for harassment under FEHA. *See Cozzi v.

County of Marin*, 787 F. Supp. 2d 1047, 1069 (N.D. Cal. 2011).

  Both Miliano and the Concord Defendants move to dismiss Plaintiffs' hostile work

environment cause of action on three grounds: (1) Brock cannot prevail because he is not a

member of a protected class targeted by Miliano; (2) Plaintiffs did not plead facts sufficient to

show they were harassed because of their membership in a protected class; and (3) Plaintiffs have

not alleged that Miliano's harassment was severe or pervasive. The Court agrees that Brock's

hostile work environment claim may not go forward, but rejects the other arguments asserted by

the Defendants.

  First, the Court agrees that Brock cannot state a claim for relief under Title VII or FEHA.

While third parties may have a cause of action for hostile work environment where they observe or

learn of workplace harassment, those third parties must be a member of the protected class

targeted by the hostile conduct. *Cf. Patee v. Pacific Northwest Bell Telephone Co.*, 803 F.2d 476,

478 (9th Cir. 1986) (wage discrimination claim brought by men related to conduct directed at

women in their workplace was not viable for lack of standing); *see also Treadwell v. IPC Int'l

Corp.*, 302 F. App'x 595, 596 (9th Cir. 2008) (affirming district court's dismissal of male

employee's hostile work environment claim based on co-worker's alleged sexual harassment of

female employees for lack of standing). Plaintiffs' citation to *Beyda v. City of Los Angeles*, 65

Cal. App. 4th 511 (1998), is inapposite. In *Beyda*, the California Court of Appeal permitted a

female plaintiff to present evidence of harassment of *other women* to show that she perceived her environment to be hostile to women.  *Id.* at 519.  *Beyda* does not support Plaintiffs' argument that Brock may state a claim based on hostile conduct directed at a protected class of which he is not a member.

Second, the SAC amply alleges facts demonstrating that Plaintiffs besides Brock were harassed because of their membership in a protected class.  Miliano allegedly hurled Asian-related and sexist slurs at Denton, a woman of Thai descent, *see* SAC ¶¶ 71,121; Asian-related slurs at Lao and Woo, who are a Filipino-American and Chinese-American, respectively, *see id.* ¶¶ 83, 145; Middle Eastern-related slurs at Dayekh, who is of Lebanese descent, *see id.* ¶112; Hispanic-related slurs at Montoya and Navarro, who are Mexican-American, *see id.* ¶ 137, 175; African-American-related slurs at Ubaldo, who is of African descent, *see id.* ¶ 154; and Indian-related slurs at Khan, who is Indian-American, *see id.* ¶ 135.  That Miliano's alleged verbal abuse also included some slurs and insults that were not expressly tied to a protected class does not defeat Plaintiffs' claims.  Miliano's alleged verbal abuse was replete with express insults couched in terms of the Plaintiffs' protected characteristics.  That Miliano allegedly insulted all women and non-white racial and ethnic groups does not constitute "equal opportunity offensiveness" as Defendants suggest, *see* Concord Mot. at 10; instead, it is the exact sort of virulent sexism and racism that Title VII and FEHA were enacted to address.

Third, the SAC alleges that Miliano's racist and sexist slurs were sufficiently severe and pervasive to alter the conditions of employment and create an abusive work environment.  *See* SAC ¶¶ 119 ("[Miliano] would regularly and freely use and repeat . . . 'fish-heads', 'Niggers', 'dog-eaters', and 'towel-heads' . . ."); 167 ("Every time Mr. Khan went to [Miliano's] office . . . Mr. Khan heard him refer to people as fucking low lives, Niggers, Turban Heads, Pussies, [and] Faggots."); 175 ("[Miliano] repeatedly, and on a daily basis and on multiple occasions each day, made racial comments toward Mr. Navarro.").  Plaintiffs have alleged substantially more than "simple teasing, offhand comments, and isolated incidents."  *Manatt,* 339 F.3d at 798.  Miliano's alleged conduct was both severe and ubiquitous at Lexus of Concord.  Plaintiffs have pled facts sufficient to state a claim for hostile work environment.

United States District Court
Northern District of California

1    Miliano's Motion to Dismiss the Eighth Cause of Action is **GRANTED** solely as to Brock

2    and **DENIED** as to all other Plaintiffs.

3    **H.    Twelfth Causes of Action: Conspiracy to Commit Conversion**

4        Plaintiffs allege that James and Torian conspired with Miliano to steal all or a portion of

5    their Spiff bonuses, but have not alleged facts sufficient to support a claim of conspiracy.  At best,

6    Plaintiffs allege that, when they informed James and Torian of Miliano's alleged scheme, neither

7    James nor Torian responded to or investigated their claims, and (in James' case) asked Plaintiffs

8    not to report Miliano's conduct to the police.  Although it is possible that members of a conspiracy

9    would act as James and Torian are alleged to have acted, their conduct is also consistent with

10   managers who bury their heads in the sand and/or seek to minimize liability to the company.

11   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops

12   short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal,*

13   556 U.S. 662, 678 (2009).  While the allegations do not reflect well on either James or Torian,

14   they do not support a claim for conspiracy to commit conversion.

15       Accordingly, the Court **GRANTS** the Concord Defendants' Motion to Dismiss the Twelfth

16   Cause of Action.  Should discovery reveal evidence of James or Torian's involvement, Plaintiffs

17   may move the Court to permit amendment of the complaint to re-allege this claim.

18   **I.    Fifteenth Cause of Action: Constructive Trust**

19       The Concord Defendants move to dismiss Plaintiffs' fifteenth cause of action solely on the

20   ground that, because there is no valid conversion claim, there can be no constructive trust claim.

21   *See* Concord Mot. at 13.  Because the Court has granted Defendants' motion to dismiss the

22   eleventh cause of action with leave to amend, the Court will similarly **GRANT** the Concord

23   Defendants' Motion to Dismiss the Fifteenth Cause of Action with leave to amend.

24   **J.    Seventeenth Cause of Action: Intentional Infliction of Emotional Distress**

25       "A cause of action for intentional infliction of emotional distress ("IIED") exists when

26   there is "(1) extreme and outrageous conduct by the defendant with the intention of causing, or

27   reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering

28   severe or extreme emotional distress; and (3) actual and proximate causation of the emotional

United States District Court
Northern District of California

18

distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (Cal.

2009) (citation and internal quotation marks omitted).  "A defendant's conduct is outrageous when

it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. . . .

[T]he defendant's conduct must be intended to inflict injury or engaged in with the realization that

injury will result." *Id.* (citations and internal quotation marks omitted).

Miliano and the Concord Defendants argue that Plaintiffs have failed to state a claim for

IIED because: (1) Plaintiffs allegations are not sufficiently specific; and (2) alleged wage theft,

conversion, and wrongful termination cannot support a claim for intentional infliction of

emotional distress.  Plaintiffs' opposition to Miliano's motion argues that Miliano's death threats

constitute extreme and outrageous conduct sufficient to state a claim, but does not address the

IIED claims of the Plaintiffs to whom Miliano's death threats were not directed.  *See* Opp. to

Miliano Mot. at 21-22.  Plaintiffs' opposition to the Concord Defendants' motion focuses solely

on the IIED claims purportedly alleged by Mrs. Brock and Mrs. Halhoul (discussed in detail

below), with no reference to the other Plaintiffs.  *See* Opp. to Concord Mot. at 17-18.

The Court agrees with Defendants that many of the Plaintiffs may not state a claim for

IIED.  Plaintiffs tacitly concede this point by defending only the IIED claims arising out of

Miliano's death threats, which were not directed at all Plaintiffs.  *See* Opp. to Miliano Mot. at 21-

22; Opp. to Concord Mot. at 17-18.  The only acts alleged in the SAC sufficiently outrageous to

support a claim of IIED are the death threats made by Miliano against Brock, Lao, and Dayekh.

Brock, Lao, and Dayekh each allege that Miliano threatened to kill them, and in some cases, their

families, when he learned that they had reported or were considering reporting his alleged scheme.

*See* SAC ¶¶ 55, 75, and 98.  Similar threats have been held to state a claim for intentional

infliction of emotional distress.  *See Kiseskey v. Carpenters' Trust for So. California*, 144 Cal.

App. 3d 222, 230 (Cal. App. 1983) ("The threats alleged in this case do not constitute mere

violations of the niceties of polite conversation. They constitute outrageous conduct intended to

inflict emotional distress in order to compel behavior through threats of physical violence or death,

which our law wisely proscribes.").

At the hearing on the instant motion, the Court questioned Plaintiffs' counsel concerning

19

1   whether Mrs. Halhoul and Mrs. Brock could state a claim for IIED when they only heard of

2   Miliano's alleged threats through their husbands.  In response, Plaintiffs' counsel expressed

3   surprise that the Court believed Mrs. Holhoul and Mrs. Brock asserted claims for IIED, given that

4   both the body of the SAC and Exhibit 1 to SAC clearly excluded them from the group of Plaintiffs

5   asserting those claims.  Plaintiffs' confusion is curious, given that Plaintiffs spent almost a page of

6   their opposition to Miliano's motion arguing that Mrs. Halhoul and Mrs. Brock's IIED claims

7   should survive the pleading stage:

8           The SAC pleads sufficient facts to establish IIED as to all Plaintiffs,
            including Wissam Halhoul and Teresa Brock. Mrs. Halhoul received
9           a phone call from a woman who stated she had sex with her
            husband, Plaintiff Daykeh.  (SAC ¶ 107).  In the context of the
10          Complaint, the only inference that can be drawn is that Defendant
            Miliano orchestrated the phone call with the intent of causing Mrs.
11          Halhoul and Mr. Daykeh severe emotional distress.  Additionally, as
            with Mrs. Brock, Defendant Miliano threatened to kill Mrs. Halhoul
12          and her children. This threat was communicated to Mr. Daykeh and
            directed at Mrs. Halhoul. Given the number of guns owned by Mr.
13          Miliano, the death threats were more than mere annoyances. *Yurick
            v. Superior Court* (1989) 209 Cal.App.3d 1116, 1128.  The Contra
14          Costa Superior Court agreed that Defendant Miliano's threats
            against Mr. Daykeh and his family were extreme and outrageous by
15          issuing a permanent injunction against Defendant Miliano and
            ordering him to sell all of his guns. [Citation omitted].
16
            Defendant Miliano also threatened to kill Plaintiff Teresa Brock and
17          her children. (SAC ¶55).  This intentional conduct caused severe
            emotional distress even though Mrs. Brock did not directly overhear
18          it. There is nothing more personal than a death threat, no matter how
            it is delivered, and nothing more distressing than a threat to one's
19          children. Additionally, given Defendant Miliano's ownership of
            many guns, the death threat caused Mrs. Brock to suffer severe
20          emotional distress. The Contra Costa Superior Court agreed that
            Defendant Miliano's threats against Mr. Brock and his family were
21          extreme and outrageous by issuing a permanent injunction against
            Defendant Miliano and ordering him to sell all of his guns. [Citation
22          omitted].

23   Opp. to Miliano Mot. at 18.  Because (as Plaintiffs' counsel stated during oral argument) the SAC

24   does not assert IIED claims on behalf of Mrs. Halhoul and Mrs. Brock, the Court will disregard

25   the two paragraphs of argument cited above.

26           Accordingly, the Court **GRANTS** Miliano's Motion to Dismiss the Seventeenth Cause of

27   Action as to all Plaintiffs besides Mr. Brock, Dayekh, and Lao.  The Motion is **DENIED** with

28   respect to the IIED claims asserted by Mr. Brock, Dayekh, and Lao to the extent those claims arise

United States District Court
Northern District of California

20

1    from Miliano's alleged death threats.

2        **K.    Nineteenth Cause of Action: Constructive Discharge**

3        The Concord Defendants argue that the constructive discharge claim asserted by Woo,

4    Montoya, Ubaldo, Lao, Khan, and Navarro cannot survive for the same reasons that warrant

5    dismissal of the hostile work environment claims asserted in the Eighth Cause of Action.  *See*

6    Concord Mot. at 16.  The Court has held that these six employees have stated a claim for hostile

7    work environment and therefore rejects the Concord Defendants' challenge to their constructive

8    discharge claims for the same reasons.

9        The Concord Defendants' Motion to Dismiss the Nineteenth Cause of Action is **DENIED**.

10       **L.    Twentieth Cause of Action: Loss of Consortium**

11       Mrs. Brock's and Mrs. Halhoul's claims for loss of consortium are facially insufficient.

12   The two paragraphs that allege the cause of action do not identify any facts supporting their

13   claims.  *See* SAC ¶¶ 273-74.  Instead, they merely cite the relevant legal standard and—based on

14   unidentified facts alleged in the prior 272 paragraphs—assert that Defendants are liable.  While

15   Plaintiffs' Opposition identifies paragraphs in the SAC that could potentially support a loss of

16   consortium claim, *see* Opp. at Miliano Mot. at 21, Plaintiffs were obligated to identify the alleged

17   facts supporting that cause of action in the SAC.

18       The Defendants' Motions to Dismiss the Twentieth Cause of Action is **GRANTED**.

19       **M.    Twenty-First Cause of Action: Negligence**

20       Plaintiffs' negligence claims are facially insufficient.  The four paragraphs that allege the

21   cause of action do not identify any facts supporting their claims.  *See* SAC ¶¶ 275-78.  Instead,

22   they merely cite the relevant legal standard and—based on unidentified facts alleged in the prior

23   274 paragraphs—assert that Defendants are liable.  Plaintiffs were obligated to identify the alleged

24   facts supporting their negligence cause of action in the SAC.

25       The Defendants' Motions to Dismiss the Twenty-First Cause of Action is **GRANTED**.

26   **IV.    CONCLUSION**

27       For the foregoing reasons, the Court hereby:

28       1.    DENIES the Concord Defendants' Motion to Dismiss the First Cause of Action;

United States District Court
Northern District of California

21

2. DENIES the Concord Defendants' Motion to Dismiss the Second and/or Fourth Causes of Action;

3. GRANTS the Defendants' Motions to Dismiss the Fifth Cause of Action as to all Defendants besides Torian, and DENIES the Motion as to Torian;

4. GRANTS Miliano's Motion to Dismiss the Sixth Cause of Action as to Lao, but DENIES the Motion as to all other Plaintiffs;

5. GRANTS Miliano's Motion to Dismiss the Seventh Cause of Action as to Denton, Brock, Lao, and Dayekh, but DENIES the Motion as to all other Plaintiffs;

6. GRANTS the Defendants' Motions to Dismiss the Eighth Cause of Action as to Brock, but DENIES the Motion as to all other Plaintiffs;

7. GRANTS the Defendants' Motions to Dismiss the Eleventh Cause of Action;

8. GRANTS the Concord Defendants' Motion to Dismiss the Twelfth Cause of Action;

9. GRANTS the Concord Defendants' Motion to Dismiss the Fifteenth Cause of Action;

10. DENIES the Defendants' Motions to Dismiss the Seventeenth Cause of Action as to Mr. Brock, Lao, and Dayekh, but GRANTS the Motion as to all other Plaintiffs;

11. GRANTS the Defendants' Motions to Dismiss the Twentieth Cause of Action;

12. GRANTS the Defendants' Motions to Dismiss the Twenty-First Cause of Action.

All causes of action dismissed in this order are dismissed with leave to amend.  Plaintiffs are directed to file a Third Amended Complaint in accordance with the discussion above no later than **21 days** from the date of this Order.

    **IT IS SO ORDERED.**

Dated: June 1, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

22